**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>**BRIAN R. LOMBEL,** *et al.*,</td><td>*</td><td></td></tr>
<tr><td>    **Plaintiffs,**</td><td>*</td><td></td></tr>
<tr><td>**v.**</td><td>*</td><td>**Case No.: PWG-13-704**</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>**FLAGSTAR BANK F.S.B.,**</td><td>*</td><td></td></tr>
<tr><td>    **Defendant.**</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This Memorandum Opinion disposes of:

1) Defendant Flagstar Bank F.S.B.'s ("Flagstar") Motion to Dismiss ("Def.'s Dismiss Mot."), ECF No. 22, and supporting Memorandum ("Def.'s Dismiss Mem."), ECF No. 22-1; Plaintiffs Brian and Allison Lombel's Opposition ("Pls.' Dismiss Opp'n"), ECF No. 34; and Defendant's Reply ("Def.'s Dismiss Reply"), ECF No. 40;

2) Plaintiffs' Motion to Certify Questions of Law to the Court of Appeals of Maryland ("Pls.' Mot. to Certify"), ECF No. 27, and supporting Memorandum ("Pls.' Certify Mem."), ECF No. 27-1; Defendant's Opposition ("Def.'s Certify Opp'n"), ECF No. 32; and Plaintiffs' Reply ("Pls.' Certify Reply"), ECF No. 35;

3) Plaintiffs' Motion to Stay Briefing Pending Resolution of Motion to Certify Questions of Law ("Pls.' First Stay Mot."), ECF No. 28, and supporting Memorandum ("Pls.' First Stay Mem."), ECF No. 28-1; Defendant's Opposition ("Def.'s First Stay Opp'n"), ECF No. 33, and Plaintiffs' Reply ("Pls.' First Stay Reply"), ECF No. 36; and

4) Plaintiffs' Motion in the Alternative for a Stay of Proceedings Pending Appeal in *Petry v. Prosperity Mortgage Company* ("Pls.' Second Stay Mot."), ECF No. 41, and supporting Memorandum ("Pls.' Second Stay Mem."), ECF No. 41-1; Defendant's Opposition ("Def.'s Second Stay Opp'n"), ECF No. 43; and Plaintiffs' Reply ("Pls.' Second Stay Reply"), ECF No. 44.

A hearing is not necessary. *See* Loc. R. 105.6. For the reasons stated herein, Defendant's Motion to Dismiss is GRANTED, Plaintiffs' Motion to Certify is DENIED, Plaintiffs' First Motion to Stay is DENIED as moot, and Plaintiffs' Second Motion to Stay is DENIED.

## I.   BACKGROUND

This case represents at least the third attempt in this Court  by Plaintiffs' skillful counsel to hold a mortgage lender liable for, *inter alia*, violations of the Maryland Finder's Fee Act (the "FFA"), Md. Code, Com. Law § 13-101 *et seq.*  *See* Compl. ¶ 3, *Marshall v. James B. Nutter & Co.*, No. RDB-10-3596 (D. Md. Dec. 23, 2010); Compl. ¶ 1, *Petry v. Prosperity Mortg. Co.*, No. WMN-08-1642 (D. Md. June 23, 2008); *see also* Compl., *Minter v. Wells Fargo Bank, N.A.*, No. WMN-07-3442 (D. Md. Dec. 26, 2007), ECF No. 1 (alleging RESPA and RICO violations arising out of table-funded mortgages).

For purposes of considering Defendant's Motion, this Court accepts the facts that Plaintiffs alleged in their Complaint as true. *See Aziz v. Alcoac*, 658 F.3d 388, 390 (4th Cir. 2011).  Defendant is a federally chartered savings bank that, during the relevant time period, has "funded numerous types of mortgage loans in Maryland," including making loans through "table-funding" arrangements.  Class Action Compl. & Demand for Jury Trial ¶¶ 14–16, ECF No. 2.  According to Plaintiffs, table funding refers to a practice by which a mortgage broker will identify itself to the borrower as the lender in a transaction but, in fact, serves as an intermediary

for another undisclosed lender. *Id.* ¶ 3. The funding lender advances the loan funds to the broker at the time of settlement, and in return, the loan is assigned to the funding lender at or immediately after settlement. *Id.* According to Plaintiffs, table funding is a means to "conceal[] the true role of the mortgage broker/lender in the transaction as well as the identity of the funding lender" and also "aids predatory lending practices such as loan flipping." *Id.*

Plaintiffs entered into a "mortgage refinance transaction for their residence at 324 Ahearn Court" on or about May 16, 2012. *Id.* ¶ 27. To facilitate this transaction, Plaintiffs worked with a mortgage broker, Davlaw Enterprises, Inc. d/b/a Union First Mortgage ("Davlaw"). *Id.* ¶¶ 13, 28. Davlaw also was identified as the "lender" on the Note, Deed of Trust, and other loan documents, although the loan actually was table funded by Defendant. *Id.* ¶¶ 29–31. Plaintiffs allege that they paid "at least $9,504.56 in closing costs and settlement fees" including "finder's fees of approximately $9,366.40 in loan origination charges and yield spread premiums" paid to Davlaw. *Id.* ¶ 35.[1]

---

[1] Defendant asserts that the "yield-spread premium" actually was a credit deducted from the amount owed by Plaintiffs, not a charge to Plaintiffs. *See* Def.'s Dismiss Mem. 9. Rather than adding charges of $5,083.70 and $4,282.70 to total over $9,000, Defendant claims that Plaintiffs should have subtracted the $4,282.70, yielding a total fee of $801.00 that was paid by Plaintiffs. *Id.* Plaintiffs have not presented any facts or allegations to dispute this calculation, and it appears to be borne out by the copy of the HUD-1 statement attached by Defendants to their Dismissal Memorandum, which is more legible than the copy of that document attached to Plaintiffs' Complaint. *See* HUD-1 Settlement Statement 2–3, Def.'s Dismiss Mem. Ex. 3, ECF No. 22-4; HUD-1 Settlement Statement 2–3, Compl. Ex. 1, ECF No. 2-2; *see also Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) ("[W]hen a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (emendations in original))).

The crux of Plaintiffs' claims against Defendant is that Davlaw violated the FFA at Defendant's behest.[2]  According to Plaintiffs, there either was a civil conspiracy or a principal–agent relationship between Defendant and Davlaw because Defendant employed Davlaw to recruit borrowers for its loans, *id.* ¶ 39, which "nefariously switched [the] role[ of Davlaw] and instead rendered the broker/lenders as the agents of Flagstar in the transactions, soliciting loan originations on behalf of Flagstar and raising borrowers' interest rates, instead of soliciting multiple lenders for the best rate on behalf of borrowers." *Id.*  According to Plaintiffs' allegations, Defendant had "a right of control" over Davlaw evidenced by the fact that Defendant "required the broker/lenders to use its closing package and underwriting services[,] . . . to submit each loan for Flagstar's approval prior to closing or funding, required the broker/lender to follow its closing instructions, and required the broker/lender to assign each of the mortgages to it contemporaneously with closing" as well as "instruct[ing] the broker/lenders on how to prepare loan applications in order to ensure approval of the applications by Flagstar."  Compl. ¶ 41.  Plaintiffs allege that Davlaw "had a duty to act primarily for the benefit of Flagstar" in arranging loans and "had the power to alter the legal relations of Flagstar" as well as receiving several payments from and with the knowledge of Flagstar.  *Id.* ¶ 42–44.

On December 20, 2012, Plaintiffs filed a Class Action Complaint in the Circuit Court for Montgomery County, *see* Notice of Removal, ECF No. 1 (setting forth date Complaint was filed), asserting five counts against Defendant: violation of Maryland's Finder's Fee Act, Md.

---

[2]  Plaintiffs purport to represent a class of, in essence, all borrowers in table-funded loan transactions funded by Flagstar, irrespective of the identity of the "broker/lender."  *See* Compl. ¶ 10.  However, Plaintiffs have withdrawn, without prejudice,  their motion to certify a class, *see* Order, ECF No. 20, and in any event it is far from clear that Plaintiffs' claim against various mortgage brokers arising out of thousands of discrete transactions could satisfy the requirements of *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).  Accordingly, Plaintiffs' individual claims are the only ones currently before the Court.

Code, Com. Law § 12-804, Compl. 21; violation of Maryland's Consumer Protection Act (the "MCPA"), Md. Code, Com. Law § 13-101 *et seq.*, Compl. 24; unjust enrichment, Compl. 29; negligent misrepresentation, Compl. 31; and negligence, Compl. 35. Plaintiffs also filed a Motion for Certification of the Class, ECF No. 4, which voluntarily was withdrawn without prejudice, Order, ECF No. 20. Defendant removed the case to this Court by Notice of Removal filed on March 5, 2013 claiming jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Notice of Removal ¶¶ 5–13.

Defendants filed a Motion to Dismiss for failure to state a claim on April 12, 2013. Shortly thereafter, and before responding to the motion to dismiss, Plaintiffs filed a Motion to Certify Questions of Law to the Court of Appeals of Maryland on April 24, 2013, seeking to have the Court of Appeals rule on certain "central issues" in this case. *See* Pls.' Certify Mem. 1. Five days later, on April 29, 2013, Plaintiffs filed a motion to stay briefing on the Motion to Dismiss until the Motion to Certify was resolved. Pls.' First Stay Mot. Because the Motion to Dismiss has now been fully briefed and the Motion to Certify is resolved by this Memorandum Opinion and the accompanying Order, that first motion to stay is now moot.

On July 2, 2013, Plaintiffs filed a second motion to stay, this time seeking to stay *all* proceedings pending the Fourth Circuit's ruling in the appeal of *Petry v. Prosperity Mortgage Co.*, No. WMN-08-1642, 2013 WL 3179060 (D. Md. June 20, 2013). Pls.' Second Stay Mot.

Defendant's Motion to Dismiss, Plaintiffs' Motion to Certify, and Plaintiffs' Second Motion to Stay have all been fully briefed and are now ripe.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237,

2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

Where the allegations in a complaint sound in fraud, the plaintiff also must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b) by "stat[ing] with particularity the circumstances constituting fraud." This requires that the plaintiff allege "'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

## III. DISCUSSION

### A. Defendant's Motion to Dismiss

#### 1. FFA Violations

At the outset, Plaintiffs do not allege that Defendant *directly* charged or received any finder's fees in violation of the FFA. Rather, they allege that *Davlaw* received $9,366.40 in finder's fees "by or on behalf of the Lombels." Compl. ¶ 35.[3] Yet Plaintiffs have not sued Davlaw itself, only Defendant, the lender that advanced the loan funds and eventually took assignment of the mortgage. *Id.* ¶¶ 33–35. Therefore Plaintiffs have alleged only that Defendant is vicariously liable for Davlaw's conduct. This allegation relies on claims that Defendant conspired with Davlaw, that Defendant aided and abetted Davlaw, or that Davlaw was acting as an agent of Defendant when it violated the FFA. As explained herein, none of these theories provides a basis for holding Defendant vicariously liable for any FFA violations that Davlaw may have committed.[4]

---

[3] It is not material at this time whether or not the actual fee amount was $9,366.40 as alleged by Plaintiffs, or $801 as demonstrated by Defendant's documentary evidence. In either case, Plaintiffs sufficiently have alleged that the fees in question were "finder's fees," *see* Compl. ¶ 35, and either amount is less than eight percent of the total loan amount of $226,000. *See* Md. Code, Com. Law § 12-804(a) (allowing a mortgage broker to charge a "finder's fee not in excess of 8 percent of the amount of the loan"); Table Funding Request Form, Compl. Ex. 2, ECF No. 2-3 (mortgage loan amount is $226,000).

[4] This is not to say that Plaintiffs have not alleged a violation of the FFA. A plain reading of the FFA would suggest that Davlaw (or, indeed, the broker in any table-funded loan transaction), by serving as both the mortgage broker and the nominal lender, may well have violated the FFA. *See* Md. Code Com. Law § 12-804(e) ("A mortgage broker may not charge a finder's fee in any transaction in which the mortgage broker . . . is the lender . . . ."). *But see Petry v. Prosperity Mortg. Co.*, No. WMN-08-1642, 2013 WL 3179060, at *1 (suggesting that "charges for work actually performed were not impermissible finder's fees"). If so, Plaintiffs may be generally correct that a mortgage broker cannot collect a fee in a table-funded transaction. However, because this case can be resolved solely on Plaintiffs' failure to show that Defendant is liable for any possible FFA violations, there is no need to address whether Davlaw's conduct violated the FFA.

"'The Maryland Finder's Fee Law is very narrow in its scope: it applies only to mortgage brokers and the fees they charge borrowers.' Under the act, a mortgage broker is a person who, for a fee or other valuable consideration assists a borrower in in obtaining a mortgage loan and is not named as a lender in the transaction." *Fields v. Walpole*, No. DKC-11-1000, 2011 WL 2669401, at *7 (D. Md. July 6, 2011) (quoting *Sweeney v. Savings First Mortg., LLC*, 879 A.2d 1037, 1048–49 (Md. 2005)). Accordingly, it is clear in this district that Defendant itself could not have violated the FFA directly because it was not, and is not alleged to have been, a "mortgage broker" with respect to Plaintiffs' refinancing. *See Minter v. Wells Fargo Bank, N.A.*, 924 F. Supp. 2d 627, 647 (D. Md. 2013). To the extent that Plaintiffs rely on the language of Md. Code, Com. Law § 12-804(e), barring brokers from charging a finder's fee if they also are the lender, this is a restriction on the conduct of *brokers* only, not on lenders who are not brokers.

Acknowledging that Defendant did not "*directly* violate[] the FFA," Pls.' Dismiss Opp'n 13, Plaintiffs primarily assert that Defendant has conspired in Davlaw's FFA violations. But because Defendant cannot have committed the underlying violation of the FFA, it also cannot be liable for conspiring to do so. *Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 428 (Md. 2009) ("[A] defendant may not be adjudged liable for civil conspiracy unless that defendant was legally capable of committing the underlying tort alleged."). Plaintiffs attempt to recharacterize the holdings in *Shenker* and *Minter* by reading into them restrictions not stated by the Maryland Court of Appeals or this Court, namely a limitation of civil conspiracy liability to parties that have "directly violat[ed] the statute." Pls.' Dismiss Opp'n 13–14. Plaintiffs attack that straw man with the obvious point that a defendant may be liable for civil conspiracy even where it has not directly violated a statute, *id.*, and the bewilderingly circular argument that the possibility

that a defendant could be held liable for civil conspiracy without directly violating a statute is the same as being "legally capable" of violating that statute. *Id.* at 13–14 & n.13. This attempt to pull up Plaintiffs' conspiracy claim by its own bootstraps amounts to little more than sophistry; *Shenker* makes clear that the crucial question for civil conspiracy liability is whether a defendant could be subject to liability *had he committed the underlying action*, not whether he committed that action. *See Shenker*, 983 A.2d at 428.[5]

Nor have Plaintiffs shown that the FFA should be expanded to allow for aiding and abetting liability. "Maryland courts have not yet extended the scope of aiding and abetting liability or assignee liability to statutes providing for civil liability where the statute does not expressly impose this additional avenue of liability." *Petry v. Wells Fargo*, 597 F. Supp. 2d 558, 565 (Md. 2009). "[I]t is clear that the statutory language of [] the Finder's Fee Act [does not] specifically provide for such liability. Accordingly, this Court will not imply expanded liability . . . for aiding and abetting." *Id.* (citing *Baltimore–Washington Telephone Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 746 (D. Md. 2008)).

Plaintiffs attempt to rescue their claims under the FFA by relying on agency principles— the only position taken by Plaintiffs that has not already been expressly rejected by this Court. But here Plaintiffs simply fail adequately to plead a principal–agent relationship between Defendant and Davlaw. A principal–agent relationship exists where "'(1) the agent is subject to

---

[5] Plaintiffs also have argued that Defendant can be liable for conspiracy to violate the FFA because it has the *capacity* to act as a broker in some other, hypothetical transaction, even though it was not the broker here. *See* Pls.' Certify Mem. 19. This argument wholly misrepresents the law. The defendants at issue in *Shenker* were not alleged to be incompetent—they presumably had the capacity to act as fiduciaries—they simply were not fiduciaries in the context of that suit and did not owe the fiduciary duties alleged to be violated. *See Shenker*, 983 A.2d at 428. The decisive fact is that Defendant was not a mortgage broker in this transaction; there is no need to consider whether facts could ever arise that could render Defendant liable under the FFA.

the principal's right of control; (2) the agent has a duty to act primarily for the benefit of the principal; and (3) the agent has the power to alter the legal relations of the principal.'" *Harmon v. BankUnited*, No. WDQ-08-3456, 2009 WL 3487808 (D. Md. Oct. 22, 2009) (quoting *Brooks v. Euclid Sys. Corp.*, 827 A.2d 887 (Md. Ct. Spec. App. 2003)).  Plaintiffs allege that Davlaw was "subject to a right of control by" Defendant because Davlaw used Defendant's forms and underwriting services, was required to follow Defendant's closing instructions, and was required to assign mortgages to Defendant at closing.  Compl. ¶ 41.  In response, Defendant correctly notes that "lenders use form documents in making mortgage loans . . . , and so the fact that Flagstar wanted Plaintiffs to execute a standard form note and deed of trust does not convert Davlaw from a supplier into Flagstar's agent."  Def.'s Reply 13–14.  Discovery may bear out Defendant's position; however, the facts pleaded by Plaintiffs are analogous to those that were found sufficient to show the right to control in *Harmon*, and therefore Plaintiffs have satisfied their burden on that element.  *See Harmon*, 2009 WL 3487808, at *4.  Plaintiffs allege that Davlaw "had the power to alter the legal relations of Flagstar," on the grounds that Davlaw was authorized to make loan commitments and negotiate the terms of mortgage loans that Defendant was obligated to take ownership of.  Compl. ¶ 43.

With respect to Davlaw's duties to Defendant, though, Plaintiffs make only conclusory allegations that do not suffice to allege an agency relationship.  *See Iqbal*, 556 U.S. at 663.  Plaintiffs allege that Davlaw "had a duty to act primarily for the benefit of Flagstar in the transactions of" Plaintiffs, but the only fact to support this conclusion is that Davlaw was "soliciting the mortgage loans of Named Plaintiffs and the Class solely for assignment to Flagstar, and did not solicit other lenders for these transactions."  Compl. ¶ 42.  This allegation falls far short of alleging *any* duty owed by Davlaw, much less a duty to act for the benefit of

Defendant. *See Harmon*, 2009 WL 3487808, at *4. As in *Harmon*, Plaintiffs do not show "an exclusive brokerage relationship or plead facts showing that [Davlaw] had a duty to act 'primarily' for the benefit of [Defendant] in the transactions with [Plaintiffs]." *Harmon*, 2009 WL 3487808, at *4.[6] Accordingly, Plaintiffs have failed to allege an agency relationship capable of giving rise to vicarious liability, and their FFA claim should be dismissed.

### 2. MCPA Violations

Plaintiffs' Count II alleges violation of the MCPA based upon allegedly false, misleading, or deceptive statements or omissions by Defendant. *See* Compl. ¶¶ 97, 119. Because these allegations sound in fraud, Count II is subject to the heightened pleading standards of Fed. R. Civ. P. 9(b). *See Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013); *Marshall v. James B. Nutter & Co.*, 816 F. Supp. 2d 259, 266–67 (D. Md. 2011). Rule 9(b) requires the Plaintiffs to allege "'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Plaintiffs correctly note that where a claim of fraud is based on an omission, "'meeting Rule 9(b)'s particularity requirement will likely take a different form.'" *See Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 533 (D. Md. 2013); *see also* Pls.' Dismiss Opp'n 43. However, Plaintiffs allege the active misrepresentation of "the identity of the true lender in the mortgage loan transactions and [] the terms and financial conditions applicable

---

[6] Defendant attempts to show that Davlaw was not working exclusively with Defendant by pointing out that Davlaw has been sued in this Court in connection with mortgages it arranged with other lenders. *See* Def.'s Dismiss Reply 15 & n.21; Compl., *Taccino v. Bank of Am.*, No. JFM-10-316 (D. Md. Feb. 9, 2010), ECF No. 1, Def.'s Dismiss Reply Ex. 1, ECF No. 40-1. Although the existence of this lawsuit is judicially noticeable, Fed. R. Evid. 201, the fact that another plaintiff made allegations against Davlaw in a case that involved none of the parties here does not prevent Plaintiffs from alleging otherwise.

to . . . [the] mortgage loan transactions," Compl. ¶ 106, not mere omissions. And regardless, Plaintiffs have failed to allege *any* specific misrepresentation or material omission by Defendant, or indeed, any direct contact at all between Plaintiffs and Defendant, other than vaguely asserting that Defendant generally concealed its role in Plaintiffs' mortgage transaction.

Even had Plaintiffs satisfied the requirements of Rule 9(b), they also "'must have suffered an identifiable loss, measured by the amount the consumer spent or lost *as a result of his or her reliance* on the [Defendant's] misrepresentation." *Goss v. Bank of Am., N.A.*, 917 F. Supp. 2d 445, 450 (D. Md. 2013) (quoting *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 277 (Md. 2007) (emphasis added)). The only specific harm that Plaintiffs allege is "payment of unlawful finder's fees." *See* Compl. ¶¶ 101, 108. Not only do Plaintiffs fail to allege that they would not have engaged in the loan transaction if they knew that it was being table funded, *see generally* Compl., but to the extent that Defendant may have concealed its involvement in Plaintiffs' mortgage transaction, Plaintiffs would have been under the belief that Davlaw was both its broker and the actual lender. This would have made it *more* obvious that Davlaw's fees may have been prohibited by the FFA, *see* Md. Code, Com. Law § 12-804(e) (prohibiting a broker from charging a finder's fee if it is also acting as the lender), not less so. Thus any unlawful finder's fees that Plaintiffs may have paid were in spite of Defendant's alleged misrepresentations, not because of them, and Plaintiffs' MCPA claims should be dismissed.

### 3. Common Law Claims

Plaintiffs' common law claims also must be dismissed. As an initial matter, it is unlikely that Plaintiffs could assert any of these common law claims insofar as they attempt to hold Defendant liable for Davlaw's purported FFA violations. "'Ordinarily, where a statutory remedy [such as those in the FFA] is provided, it will be deemed to be exclusive.'" *Moose v. Fraternal*

*Order of Police*, 800 A.2d 790, 797 (Md. 2002) (quoting *White v. Prince George's Cnty.*, 387 A.2d 260, 265 (Md. 1978)). However, I need not reach the issue of whether the FFA preempts Plaintiffs' common law claims because those claims fail of their own accord.

Count III alleges unjust enrichment, Compl. ¶ 29, which requires Plaintiffs to show three elements:

1. A benefit conferred upon the defendant by the plaintiff;
2. An appreciation or knowledge by the defendant of the benefit; and
3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

*Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007). Here, Plaintiffs have not alleged any benefit conferred *upon Defendant*—the only harm alleged and supported by factual allegations is a purportedly unlawful finder's fee paid to Davlaw. *See* Compl. ¶ 35 ("Davlaw received finder's fees"). It is dubious that "lowering the compensation Flagstar had to pay directly to its agents" is a cognizable harm for the purpose of unjust enrichment. *See Baltimore City Bd. of School Comm'rs v. Koba Inst., Inc.*, 5 A.3d 400, 429 (Md. Ct. Spec. App. 2010) ("The mere nonpayment for services does not constitute unjust enrichment." (citation omitted)). But even if it were, Plaintiffs have alleged that harm only in in a vague and conclusory fashion, *see* Compl. ¶ 112, and therefore cannot survive a motion to dismiss, *see Iqbal*, 556 U.S. at 663.

Counts IV and V allege negligent misrepresentation and negligence, respectively.[7] Compl. 31, 35. Plaintiffs' claim for negligent misrepresentation, in essence, echoes their MCPA

---

[7] Both claims also allege conspiracy to commit negligence. *See* Compl. ¶¶ 127, 141. This is a logical impossibility and borders on the incoherent. Because civil conspiracy requires a deliberate—*i.e.* intentional—agreement to accomplish a particular end, *see Hoffman v. Stamper*, 867 A.2d 276, 291 (Md. 2005), whereas negligence requires unintentional conduct, *see, e.g.*, Restatement of Torts (Second) § 282 cmt. d (negligence "excludes conduct which creates liability because of the actor's intention to invade a legally protected interest), one cannot

claim with the sole difference being that Defendant's misrepresentations are alleged to be inadvertent but negligent.  It is true that "[n]egligent misrepresentation is a separate and distinct tort from fraud under Maryland law."  *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 796 (D. Md. 2002).  But like fraud, negligent misrepresentation requires that a plaintiff rely on the misrepresentation and suffer harm as a result of her reliance. *See id.* at 798 (the elements of negligent misrepresentation include that "the plaintiff, justifiably, takes action in reliance on the statement; and [] the plaintiff suffers damage proximately caused by the defendant's negligence" (quoting *Martens Chevrolet, Inc. v. Seney*, 439 A.2d 534, 539 (Md. 1982)).  The only harm alleged by Plaintiffs is that they paid an unlawful finder's fee in violation of the FFA.  Compl. ¶¶ 112–13, 116.  As with Plaintiffs' MCPA claim, *see supra*, Defendant's alleged misrepresentation would have made the purported FFA violations *more* obvious, not less so, and thus cannot support a claim for negligent misrepresentation.

Plaintiffs' negligence claim is little more than an attempt to render Defendant vicariously liable for Davlaw's purported violations of the FFA.  However, for the same reason that Defendant cannot be liable for a conspiracy to violate the FFA, *see supra*, it is plain that Defendant also cannot be liable for negligently allowing the FFA to be violated.  It is well-settled that "[e]ssential to the proof of any cause of action for negligence is the establishment of a legally cognizable duty owed by the defendant to the plaintiff."  *Erie Ins. Co. v. Chops*, 585 A.2d 232, 235 (Md. 1991) (citing *Jacques v. Fist Nat'l Bank*, 515 A.2d 756 (Md. 1986); *see also W. Va. Cent. & Pittsburgh Ry. Co. v. State*, 54 A. 669, 671 (Md. 1903) ("Of course there can be no negligence where there is no duty that is due; for negligence is the breach of some duty that one

conspire to be negligent.  *Cf.* Orin S. Kerr, *A Theory of Law*, 16 Green Bag 2d 111 (2012) (observing, albeit tongue in cheek, that some propositions are so obvious that they have never been expressly stated).

person owes to another.").  If Defendant is under no duty to refrain from *deliberately* conspiring to cause another to violate the FFA, *see Minter*, 924 F. Supp. 2d at 647; *cf. Shenker*, 983 A.2d at 428 (holding that conspiracy liability cannot exist in the absence of a duty owed by defendant), then it cannot possibly be under a duty to refrain from inadvertently facilitating such a violation. To find otherwise would be to undermine this Court's opinions in *Minter*, *Marshall*, and *Petry*, as well as the Maryland Court of Appeals's ruling in *Shenker*.  There is no need to consider whether Plaintiffs adequately have alleged an intimate nexus (or needed to do so), or any of Defendant's other contentions.  *See* Def.'s Dismiss Mot. 31–32.  Plaintiffs' negligence claim must be dismissed.

Because Plaintiffs have not made out a prima facie case against Defendant with respect to any of the alleged counts, there is no need to consider Defendant's preemption argument.  *See* Def.'s Dismiss Mot. 33–37.

### B.  Plaintiffs' Motion to Certify

Plaintiffs seek to avoid (or at least delay) dismissal of their Complaint by asking this Court to certify several questions to the Maryland Court of Appeals.  Specifically, Plaintiffs seek certification of the following questions:

> 1. Whether the decision in [*Shenker*] abrogated the rule that liability for civil conspiracy may extend beyond direct perpetrators of the underlying tort;
> 2. Whether a non-broker may be liable for common law conspiracy to violate the [FFA], where the non-broker conspired with a Maryland broker to violate the act; and,
> 3. Whether the definition of a "finder's fee" in [the FFA] to include "any compensation or commission directly or indirectly imposed by a broker and paid by or on behalf of the borrower for the broker's services in procuring, arranging, or otherwise assisting a borrower in obtaining a loan or advance of money," excludes fees for work

actually performed by a broker, or includes all fees retained by the broker and not expressly excluded by [the FFA].

Pls.' Certify Mot. 1

In an earlier case, this Court observed:

First, this Court notes that in seeking to present these questions to the Court of Appeals of Maryland, Plaintiff[s are] essentially requesting that this Court ask the Maryland Court to affirm or displace its ruling in *Petry*[, *Minter*, and *Marshall*]. Second, "it is well established that the decision to certify a question to the Court of Appeals of Maryland is not obligatory and 'rests in the sound discretion of the federal court.'" *Hafford v. Equity One, Inc.*, Nos. AW-07-1633, AW-06-0975, 2008 WL 906015, at *4 (D. Md. Mar. 31, 2008) (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S. Ct. 1741, 40 L. Ed. 2d 215 (1974); *Boyster v. Comm'r of Internal Revenue Serv.*, 668 F.2d 1382 (4th Cir. 1981)). In exercising such discretion, federal courts may decide not to certify a question to a state court where the federal court can reach a "reasoned and principled conclusion." *Hafford*, 2008 WL 906015, at *4. "Only if the available state law is clearly insufficient should the court certify the issue to the state court." *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir.1994) (citing *Smith v. FCX, Inc.*, 744 F.2d 1378, 1379 (4th Cir.1984), *cert. denied*, 471 U.S. 1103, 105 S. Ct. 2330, 85 L. Ed. 2d 848 (1985)). "When this guidance is available the federal court should decide the case before it rather than staying and prolonging the proceedings." *Arrington v. Coleen, Inc.*, 2001 WL 34117735, at *5 (D. Md. Mar. 29, 2001).

*Marshall*, 2013 WL 3353475, at *7. Because I agree with the other Judges of this Court that this Court is capable of resolving the state law issues before it, *see Minter*, 924 F. Supp. 2d at 648; *Marshall*, 2013 WL 3353475, at *6–7; *Petry*, 2013 WL 3179060, at *2–3, Plaintiffs' motion will be DENIED.

First, certification is only appropriate where a question of state law "is determinative in the case before it." *Grattan v. Bd. of School Comm'rs*, 804 F.2d 1160, 1164 (4th Cir. 1986). Because my ruling does not require a determination as to whether the fees complained of by Plaintiffs are properly considered "finder's fees" under the FFA, there is no conceivable reason to seek the view of the Court of Appeals with respect to the definition of that term.

Similarly, Plaintiffs' first question, relating to how far *Shenker* goes to limit civil conspiracy liability, also is not relevant to my ruling here. In holding that Defendant, under these facts, could not have been liable for civil conspiracy, I have not read *Shenker* to eliminate civil conspiracy liability entirely (which would be the result of eliminating it for anybody who did not participate directly in the underlying tort). *See Shenker*, 983 A.2d at 428–429 (limiting, but not eliminating, civil conspiracy liability). Contrary to Plaintiffs' claims, *see* Pls.' Certify Mem. 25, *Mintner* did not hold otherwise. *See Mintner*, 924 F. Supp. 2d at 647 (holding that defendants cannot be liable for conspiracy because "they are not *capable* of violating the FFA directly," not because they did not directly violate the FFA (emphasis added)). There is no need to seek guidance from the Maryland Court of Appeals with respect to Plaintiffs' over-reading of *Shenker*.

With respect to the second question on which certification is sought, "[t]he absence of a decision by the Court of Appeals that is directly on point does not equate to uncertainty in Maryland law." *Snyder v. Phelps*, 533 F. Supp. 2d 567, 586 (D. Md. 2008), *rev'd on other grounds*, 580 F.3d 206 (4th Cir. 2009), *aff'd* 131 S. Ct. 1207 (2010). The Maryland Court of Appeals has clearly stated that the FFA "applies only to mortgage brokers and the fees they charge borrowers," *Sweeney v. Savings First Mortg., LLC*, 879 A.2d 1037, 1048–49, so that Defendant cannot be liable for an FFA violation in its own right, and that therefore cannot be liable for conspiracy to violate the FFA under *Shenker*, *see supra*. Furthermore, the exact question Plaintiffs seek to certify already has been resolved by two other Judges of this Court, in three other opinions, without the need to seek specific guidance from the Maryland Court of Appeals. *See Minter*, 924 F. Supp. 2d at 648; *Marshall*, 2013 WL 3353475, at *6–7; *Petry*, 2013

WL 3179060, at *2–3.  I see no reason why this case requires different treatment, and therefore Plaintiffs' motion to certify should be DENIED.

### C.  Plaintiff's Motions to Stay

Plaintiffs have filed two motions to stay.  The first, ECF No. 28, sought to stay briefing of Defendant's Motion to Dismiss while Plaintiffs' Motion to Certify was pending.  However, the motions to dismiss and to certify have both now been fully briefed and are disposed of in this opinion.  As such, Plaintiffs' First Stay Motion is DENIED as moot.

With respect to Plaintiffs' Second Stay Motion, ECF No. 41, Plaintiffs are correct that the Court has inherent power to stay proceedings to control its docket and allow for expeditious resolution of the cases before it.  *See* Pls.' Second Stay Reply 3; *see also Popoola v. MD-Individual Practice Ass'n, Inc.*, No. DKC-00-2946, 2001 WL 579774, at *2 (D. Md. May 23, 2001).  However, Plaintiffs have not shown hardship to themselves, lack of prejudice to Defendant, or that a stay will conserve judicial resources.  *See Yearwood v. Johnson & Johnson, Inc.*, No. RDB-12-1374, 2012 WL 2520865, at *3 (D. Md. June 27, 2012).  This is particularly so here, where the record reflects that *Minter*, *Marshall*, and *Petry* all have been appealed in the last few months and may not be resolved for some time.  *See* Notice of Appeal, *Minter*, No. WMN-07-3442 (D. Md. Sept. 10, 2013), ECF No. 683; Order of USCA "Consolidating," *Minter*, No. WMN-07-3442 (D. Md. Oct. 1, 2013), ECF No. 690; Notice of Appeal, *Marshall*, No. RDB-10-3596 (D. Md. July 24, 2013), ECF No. 120; Notice of Appeal, *Petry*, No. WMN-08-1642 (D. Md. July 8, 2013), ECF No. 409.  Plaintiffs had reason to expect that this case might be dismissed in light of the rulings in *Minter*, *Marshall*, and *Petry*, whereas there is no reason to leave this case pending against Defendant when it easily can be resolved under existing law.  To the extent that Plaintiffs may choose to appeal this case to the Fourth Circuit, it would be far

more efficient to give the Fourth Circuit the opportunity to have all of the FFA cases brought by Plaintiffs' counsel before it at once, rather than to stay this case and run the risk that its ultimate result may turn on some vagary that had not arisen in any of the other pending FFA cases, leaving open the possibility of a wholly new appeal. Accordingly, Plaintiffs' Second Stay Motion is denied.

## IV.    CONCLUSION

For the aforementioned reasons:

1) Defendant's Motion to Dismiss is GRANTED;

2) Plaintiffs' Motion to Certify is DENIED;

3) Plaintiffs' First Motion to Stay is DENIED as moot; and

4) Plaintiffs' Second Motion to Stay is DENIED.

A separate order shall issue.

Dated: October 11, 2013                    _____/S/_____
                                           Paul W. Grimm
                                           United States District Judge

dsy